clf\davis-riddle\pleadings\motion for prelim approval_davis

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH DAVIS, individually and
on behalf of all others similarly situated,
                                   Plaintiff,
                vs.

RIDDLE & ASSOCIATES, P.C. and
JESSE RIDDLE,
                                   Defendants.

CIVIL ACTION NO. 07-CV-0284(LDD)

CLASS ACTION

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT OF PRELIMINARY APPROVAL
OF CLASS SETTLEMENT (UNCONTESTED)**

**CERTIFICATION OF CARY L. FLITTER IN SUPPORT**

**CERTIFICATION OF THEODORE E. LORENZ IN SUPPORT**

**Cary L. Flitter**
**Theodore E. Lorenz**
**Lundy, Flitter, Beldecos &**
**Berger, P.C.**
**450 N. Narberth Avenue**
**Narberth, PA 19072**
**(610) 822-0782**

**Attorneys for Plaintiff and the Class**

# TABLE OF CONTENTS

Page

Table of Authorities............................................................iii-vii

I.   Nature Of The Case.......................................................3

II.  Nature Of Plaintiff's Claims Under The Act.........................5

     A.   Purpose and Background of the FDCPA........................5

III. Elements For Class Certification Are Met...........................7

     A.   Standard for Class Certification.................................7

     B.   The Proposed Class Meets the Requirements
          for Certification.................................................8

          1.   Rule 23(a)(1) -- Numerosity............................8

          2.   Rule 23(a)(2) -- Commonality..........................8

          3.   Rule 23(a)(3) -- Typicality.............................10

          4.   Rule 23(a)(4) -- Adequacy Of Representation......10

          5.   Rule 23(b)(3) -- Common Questions Of Law
               Or Fact Predominate.................................12

          6.   Rule 23(b)(3) -- Class Action Is Superior To
               Other Available Methods To Resolve This
               Controversy...........................................13

          7.   Rule 23(g) Factors....................................15

IV.  Summary Of Settlement................................................16

V.   The Settlement Satisfies The Requirements For Preliminary
     Approval.................................................................17

     A.   Standards For Preliminary Approval.........................17

     B.   The Terms Of The Proposed Settlement are
          Fair -- Indeed Very Favorable..............................20

i

Page

VI.    Class Notice ................................................................................ 21

VII.   Conclusion ................................................................................... 22

## TABLE OF AUTHORITIES

Page

Cases

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)..............................................................7, 12, 14

*Baby Neal for and by Kanter v. Casey,*
43 F.3d 48 (3rd Cir. 1994).....................................................8, 9, 10

*Bell Atlantic v. Bolger*, 2 F.3d 1304
(3d Cir. 1993)................................................................................18

*Bonett v. Educ. Debt Servs. Inc.,*
Class Action No. 01-6528, 2003 U.S.
Dist. LEXIS 9757 (E.D. Pa. May 9, 2003)....................................5

*Bradburn Parent/Teacher Stores, Inc. v. 3M,*
02-7676, 2004 U.S. Dist. LEXIS 16193, at *5
(E.D. Pa. Aug. 17, 2004)...........................................................8-9

*Brown v. Card Service Center*, 464 F.3d
450 (3d Cir. 2006).........................................................................6

*Carr v. Trans Union Corp.*, 94-0022,
1995 U.S. Dist. LEXIS 567 (E.D. Pa.
Jan. 12, 1995)............................................................................7, 9

*Ciccarone v. B.J. Marchese, Inc.*, 03-cv-1660,
2004 U.S. Dist. LEXIS 26489, at *10-11
(E.D. Pa. Dec. 14, 2004).............................................................11

*Colbert v. TransUnion Corp.*, 93-6106,
1995 U.S. Dist. LEXIS 578, at *4 (E.D. Pa.
Jan. 12, 1995)...................................................................8, 12, 13

*Collier v. Montgomery County*, 192 F.R.D. 176
(E.D. Pa. 2000).............................................................................19

*Crossley v. Lieberman*, 868 F.2d 566
(3d Cir. 1989)................................................................................6

Page

Cases

*Dotson v. MRS Associates, Inc.*, 06-cv-615
(E.D. Pa. 2006)........................................................................11

*Eisenberg v. Gagnon*, 766 F.2d 770
(3d Cir. 1985).........................................................................7

*F.T.C. Check Investors, Inc.*,
502 F.3d 159 (3d Cir. 2007)..................................................6

*Fry v. Hayt, Hayt and Landau*,
198 F.R.D. 461 (E.D. Pa. 2000)...........................................5

*Gaskin v. Pennsylvania*, 389 F. Supp. 2d 628
(E.D. Pa. 2005)......................................................................19

*Georgine v. Amchem Products, Inc.*,
83 F.3d 610 (3rd Cir. 1996)..................................................12

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)....................19

*Grasty v. Amalgamated Clothing and Textile
Workers Union, AFL-CIO, CLC*, 828 F.2d
123 (3rd Cir. 1987)................................................................10

*Graziano v. Harrison*, 950 F.2d 107 (3d
Cir. 1991)...........................................................................6, 20

*Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988)...................11

*In re Automotive Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at
*8-9 (E.D. Pa. May 11, 2004)............................................18, 20

*In re Corel Corp. Securities Litig.*, 293 F. Supp. 2d 484
(E.D. Pa. 2003)......................................................................20

*In re General Motors Truck Litig.*, 55 F.3d 768
(3d Cir. 1995)....................................................................18, 19

*In re Prudential Ins. Co. of America Sales
Practices Litigation*, 148 F.3d 283 (3rd Cir. 1998)..............13

Page

Cases

*In re Warafin Sodium Antitrust Litig.*, 391 F.3d 516
(3d Cir. 2004)...............................................................................18

*Keele v. Wexler*, 149 F.3d 589 (7th Cir. 1998)...........................................9

*Labbate-D'Alauro v. GC Servs. Ltd. P'ship*,
168 F.R.D. 451 (E.D. N.Y. 1996)......................................................7, 13

*Lake v. First Nationwide Bank*, 156 F.R.D.
615 (E.D. Pa. 1994)........................................................................*passim*

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338
(7th Cir. 1997)..............................................................................14

*McCall v. Drive Fin. Servs., L.P.*,
236 F.R.D. 246 (E.D. Pa. 2006)...........................................7, 9, 10, 11, 12

*Oslan v. Collection Bureau of Hudson Valley*,
206 F.R.D. 109 (E.D. Pa. 2002).........................................................12

*Oslan v. Law Offices of Mitchell N. Kay*,
232 F. Supp. 2d 436 (E.D. Pa. 2002)...............................................17-18

*Parks v. Portnoff Law Associates, Ltd.*,
210 F.R.D. at 149...........................................................................7, 18

*Perry v. FleetBoston Fin. Corp.*, 229 F.R.D.
105 (E.D. Pa. 2005).........................................................................21

*Philadelphia Hous. Auth. V. Am. Radiator and
Standard Sanitary Corp.*, 323 F. Supp. 364 (E.D. Pa. 1970).....................18

*Piper v. Portnoff Law Assocs., Ltd.*,
396 F.3d 227 (3d Cir. 2005).................................................................6

*Riordan v. Smith Barney*, 113 F.R.D. 60
(N.D. Ill. 1986).................................................................................8

*Russell v. Equifax ARS*, 74 F.3d 30
(2d Cir. 1996)....................................................................................6

*Sala v. National Railroad Passenger Corp.*,
120 F.R.D. 494 (E.D. Pa. 1988).............................................................8

Page

Cases

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ................................................8

*Stewart v. Associates Consumer Discount Co.*,
183 F.R.D. 189 (E.D. Pa. 1998) ...............................................................10

*Tenuto v. Transworld Systems, Inc.*, 99-4228,
2000 U.S. Dist. LEXIS 14344, at *7 (E.D. Pa.,
Oct. 2, 2000) ...................................................................................9, 13, 19

*Townes v. NCO Financial Systems, Inc.*,
06-cv-1305 (E.D. Pa. 2006) ...................................................................11

*Wachtel v. Guardian Life Ins. Co. of America*,
453 F.3d 179 n. 6 (3d Cir. 2006) ............................................................21

*Weinstock v. Inovision-MEDCLR Portfolio
Group, et al.*, 05-cv-6392 (E.D. Pa. 2007) ............................................11

*Weiss v. Regal Collections*, 385 F.3d 337
(3d Cir. 2004) .............................................................................6, 7, 14

*Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1984) .................................8

*Wilson v. Quadramed Corp.*, 225 F.3d 350
(3d Cir. 2000) .............................................................................................6

Statutes

15 U.S.C. § 1692 ..................................................................................*passim*

Rules

Federal Rule of Civil Procedure 23 ......................................................*passim*

Miscellaneous

2 *H. Newberg on Class Actions* (3d ed. 1992), §7.22A ..........................8

2 *H. Newberg on Class Actions* (3d ed. 1992), §11.41 ....................17, 19

*Manual for Complex Litigation* § 21.632-633 (4th ed. 2004) ...............18

*Moore's Federal Practice*, ¶ 23.162 (3d ed. 2006) ..............................18

Page

Miscellaneous

*Pennsylvania Consumer Law*, Geo. Bisel Publishing Co. ...................................................11

clf\davis-riddle\pleadings\motion for prelim approval_davis

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH DAVIS, individually and
on behalf of all others similarly situated,
                                    Plaintiff,

            vs.                                             CIVIL ACTION NO. 07-CV-0284(LDD)

RIDDLE & ASSOCIATES, P.C. and
JESSE RIDDLE,
                                    Defendants.              CLASS ACTION

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND NOTICE TO THE CLASS (UNCONTESTED)

Plaintiff, Joseph Davis, moves the Court, pursuant to Rule 23 of the Federal Rules of

Civil Procedure, for preliminary approval of a Class Settlement.

Plaintiff Joseph Davis brings this case as a class action against Riddle & Associates, P.C.

and Jesse Riddle (hereinafter collectively referred to as "Riddle" or "Defendants") for violations

of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §§ 1692 *et seq.*

Plaintiff has averred that Riddle routinely sent out collection notices with the language "[i]f you

request proof of the debt . . . the law requires our firm to suspend our efforts to collect the debt

(through litigation or otherwise)" where suit was not and could not be commenced because suit

on any such account was time-barred.  A copy of the challenged collection notice is appended

hereto as Exhibit "A."  The notice violates the FDCPA's prohibitions against: (a) the use of false,

deceptive, or misleading representations or means in connection with the collection of any debt,

15 U.S.C. § 1692e; (b) threatening to take any action that could not legally be taken or that was

not intended to be taken, 15 U.S.C. § 1692e(5); and (c) the use of false representations or

deceptive means in an attempt to collect a debt alleged due, 15 U.S.C. § 1692e(10).

1

The parties have now reached a settlement, subject to approval of this Court, consisting of the following terms: (a) Defendants stipulate to certification of the Class designated in the agreement of settlement, to Plaintiff Davis serving as the class representative, and to Cary L. Flitter and Theodore E. Lorenz, and the law firm of Lundy, Flitter, Beldecos & Berger, PC serving as class counsel; (b) Defendants will pay $25,000.00 to the Class; (c) Defendants will pay all costs associated with the administration of the settlement, and First Class, Inc. of Chicago will serve as the class administrator; (d) notice will be by mail to a class of approximately 6,324 individuals indentified by Defendants who received the challenged letter during the class period, as defined in the agreement of settlement; (e) Defendants will pay Plaintiff Davis $1,000.00 on his individual statutory claim and $1,000.00 as an incentive award for serving as Class Plaintiff, plus such amount as a Class Member may receive; (f) Defendants will pay reasonable class counsel fees and costs through the conclusion of the case, including its administration, in an amount to be agreed upon by counsel (and subject to Court approval) or awarded by the Court upon submission of a fee petition; the right to appeal a fee award by the District Court is retained; (g) Defendants have discontinued the use of the subject letter in connection with the collection of time-barred accounts and agree in the future not to include the phrase "through litigation or otherwise" in collection of time-barred accounts; (h) payments to the Class and Plaintiff as outlined in sections (b) through (e) above will be made to an interest bearing account within 14 days of the final approval; and (i) upon final approval by the Court, the releasing persons release, acquit and forever discharge the released persons from all released claims as pled in the Second Amended Complaint – corrected version.

Further, Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Joseph Davis respectfully requests that the Court enter an order certifying the Settlement Class. The

class is defined as: (a) all persons with addresses in the Commonwealth of Pennsylvania; (b) to whom letters were sent by Riddle & Associates, P.C. ("Riddle"); (c) in an attempt to collect a debt alleged to be due; (d) incurred primarily for personal, family or household purposes; (e) between March 6, 2006 and April 21, 2008; (f) which states "the law requires our firm to suspend our efforts to collect the debt (through litigation or otherwise)" or substantially identical language; and (g) which references a "last charge/paid date" more than four years before the date of the letter.

In support of the Motion to Certify the Settlement Class, Plaintiff submits that all of the requirements of Rule 23(a), Rule 23(b)(3), and Rule 23(g) have been met. In support, Davis avers:

1.     Plaintiff has filed this class action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, by Defendants Riddle & Associates, P.C. and Jesse Riddle.

2.     The policy and practice of Defendants was to mail letters to Pennsylvania consumers in an attempt to collect consumer debts alleged due. Defendant Riddle & Associates, P.C., a debt collection law firm, and its principal, Jesse Riddle, have sought to collect on stale, time-barred debt. Defendants are each a "debt collector" as that term is contemplated in the FDCPA. 15 U.S.C. § 1692a(6). Defendants sent letters to Plaintiff and the class stating "[i]f you request proof of the debt . . . the law requires our firm to suspend our efforts to collect the debt (through litigation or otherwise)." Plaintiff has asserted that the statement is deceptive and misleading in violation of the FDCPA as it implies that Riddle has or may commence litigation when in fact it did not and could not because suit has long since been time-barred. A copy of the challenged letter is appended hereto as Exhibit "A."

3.    All requirements of Rule 23 of the Federal Rules of Civil Procedure have been met.

4.    Based on the use of form letters with the impermissible language, the class is so numerous that joinder of all members is impractical.

5.    There are questions of law and fact common to the class which predominate over any questions affecting only individual class members.  The principal issue is whether the Defendants' form letter which implies that litigation has commenced or may commence on time-barred accounts violates the FDCPA, 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10).

6.    Defendants have attested to approximately 6,324 putative class members and have provided a list with the names and last known addresses of the affected individuals.

7.    Mr. Davis' claim is typical of the claims of the members of the class.  All of the claims are based on the same factual and legal theories, *i.e.* -- each class member received a letter that contained language implying that Riddle has or may commence litigation when in fact it did not and could not because suit was time-barred.

8.    Plaintiff will fairly and adequately protect the interests of the class.  He is committed to vigorously litigating this matter and has retained counsel experienced in prosecuting consumer class actions.  *See* Certification of Cary L. Flitter and Certification of Theodore E. Lorenz, filed herewith.

9.    Pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, a class action is a superior method for the fair and efficient adjudication of this controversy in that:

(a) Congress specifically contemplated FDCPA class actions as a principal means of enforcing the statute. 15 U.S.C. § 1692k.

(b) Most of the class members are not aware of their rights and have no knowledge that their rights are being violated by illegal collection practices.

(c) The interest of class members in individually prosecuting separate claims against Defendants is small, because the maximum amount of statutory damages in an individual action is $1,000.  15 U.S.C. § 1692k(a).

(d) Management of this class action is not likely to present significant difficulties, and presents fewer difficulties than those presented in many class claims.

10.    These grounds are further explained and supported by the accompanying Memorandum, which Plaintiff incorporates herein.  The Certifications of Cary L. Flitter and Theodore E. Lorenz are also filed herewith.

WHEREFORE, and for the reasons set forth more fully in the within Memorandum of Law, Plaintiff submits that this settlement is fair, reasonable and accurate, reached after protracted arms-length negotiation, and in the best interest of the class.  A settlement class should be certified under Rule 23.  Preliminary approval should be granted to permit notice to issue to the Class.  Defendants consent to certification for purposes of settlement, and to preliminary and final approval.

Date:  April 21, 2008

_/s/ Cary L. Flitter(CLF5997)_____
CARY L. FLITTER
THEODORE E. LORENZ
LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782
Attorneys for Plaintiff

# EXHIBIT "A"



**RIDDLE** P.O. Box 1187
Sandy, UT 84091-1187

**& ASSOCIATES P.C.**
Attorneys & Counselors at Law

Our Client: NCO Financial Systems
Account Purchaser: InoVision, Inc.
Original Creditor: PECO ENERGY COMPANY

Reference ▮▮▮▮▮▮▮

October 16, 2006

Please fill out and remit below or call us toll-free at
1-800-225-5050

Date: _____   Amount Enclosed: $ _____.___

JOSEPH DAVIS ▮▮▮▮
5419 EUCLID ST
PHILADELPHIA, PA 19131

Send payment to Riddle & Associates, P.C.
P.O. Box 1187, Sandy, UT 84091-1187

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Please Return Top Portion With Payment

Our law firm has been retained to collect from you the Total Amount Due below.

If you want to resolve this matter, you must either pay the Total Amount Due (unless it has already been paid) or call our law firm at
1-800-225-5050 and work out arrangements for payment.

Federal law gives you thirty days after you receive this letter to dispute the
validity of the debt or any part of it. If you don't dispute it within that period,
we will assume that it is valid. If you do dispute it--by notifying our firm in
writing to that effect--we will, as required by law, obtain and mail to you proof
of the debt. And if, within the same period, you request in writing the name
and address of your original creditor, if the original creditor is different from
current creditor, we will furnish you with that information too.

| | | |
|---|---|---|
| Account Number: | | ▮▮▮▮▮▮ |
| Last Charge/Paid Date: | | 05-03-91 |
| Account Balance: | $ | 706.63 |
| Interest Owing: | $ | 0.00 |
| Attorney/Collection Costs: | $ | 0.00 |
| Total Amount Due: | $ | 706.63 |

If you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt
of this letter, the law requires our firm to suspend our efforts to collect the debt (through litigation or otherwise) until we mail the
requested information to you.

At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.

As of the date of this letter, you owe the Total Amount Due shown above. Because of interest, and other charges that may vary from
day to day, the Total Amount Due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may
be necessary after we receive your payment, in which event we will inform you before depositing the payment for collection. For further
information, write the undersigned or call 1-800-225-5050.

Send your payment for the Total Amount Due to:
Riddle & Associates, P.C.
P.O. Box 1187
Sandy, UT 84091-1187

Payments may also be made by the following: Check by Phone, Credit Card, Western Union, or MoneyGram. We also work with a
mortgage lender for larger balances. To make payment or for information on any of the previous, call 1-800-225-5050.

 


GLB-MED 1/05

MARLIN INTEGRATED CAPITAL HOLDING CORPORATION, INOVISION, INC., INOVISION, A MARLIN COMPANY, LLC, MEDCLR, INC., MARLIN INTEGRATED CAPITAL, LLC, INOVISION-MEDCLR PORTFOLIO GROUP, LLC, INOVISION-MEDCLR-NCOP F, LLC, INOVISION-MEDCLR - NCOP NF, LLC (collectively the "Marlin companies", and "us" or "we" when referring to a particular Marlin company),

THE MARLIN COMPANIES' PRIVACY NOTICE - This notice is being forwarded to you in compliance with the Gramm-Leach-Bliley Privacy Act. This notice has no reflection or bearing upon the status of your account.

The privacy and security of your personal information is important to us. This notice will inform you about our policies and procedures concerning the personal information about you that we obtain, maintain and disclose in connection with the account(s) of yours that we own or owned. We collect nonpublic personal information about you that is obtained from one or more of the following sources:

1. Information we received from companies that sold us your account(s) (for example, applications, contracts, checks and other related forms or documents regarding your dealings with your original creditor);

2. Information about your transactions with us, our affiliates or others; and,

3. Information from skip- tracing companies and/or consumer-reporting agencies.

INFORMATION WE MAY SHARE WITH OUR AFFILIATES - We may share identification (such as name and address), information about our transactions and experiences with you (such as payment history), and information that does not identify you, with one or more of the Marlin companies and/or with certain of our other affiliates in order to better service your accounts.

INFORMATION WE MAY SHARE WITH NONAFFILIATED COMPANIES - We share all of the information we collect about you, as described above, with nonaffiliated companies, as permitted by law, to assist in the servicing of your account(s). For example, we:

1. May share information about you with companies that we use ("Servicers") to perform account servicing functions to manage and maintain your account and to process transactions that you have authorized;

2. May report information about you to consumer reporting agencies, government agencies in response to a subpoena, or others in connection with investigations (For example, if you account is closed as a result of a payment, settlement or otherwise, we report this to consumer reporting agency(ies));

3. May share information about you with the original creditor from which we purchased your account and/or its servicers, or successors, to manage and maintain your account and to process transactions that you have authorized; and

4. We may disclose identifiable information to another entity with which we enter into, or intend to enter into, a corporate transaction, such as, for example, a merger, consolidation, joint venture, acquisition, or asset purchase.

Because we respect your privacy, we do not sell, trade or otherwise disclose your identity or any other personal information about you to third parties for their marketing purposes.

CONFIDENTIALITY AND SECURITY OF YOUR ACCOUNT - We restrict access to nonpublic personal information about you to only those employees who need to know such information, and certain third parties as noted above. We maintain physical, electronic and procedural safeguards to protect your personal information. If we use other companies to provide services for us, we require them to keep the information we share with them safe and secure and we do not allow them to use or share the information for any purpose other than the job they are hired to do.

FURTHER INFORMATION: For additional information concerning our privacy policy, you may write to us, in care of our Servicer, at: NCO Financial Systems, Inc., P.O. Box 8547, Philadelphia, PA 19101-8547. You may also contact us through our Web site at marlinholdings.com/privacy where a copy of our Privacy Policy is contained, or contact us at 1-877-202-9074.

In accordance with the Fair Debt Collection Practices Act (FDCPA): This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.

Vermont Residents Only: Following the law of your state, we will not disclose nonpublic personal financial information about you to nonaffiliated third parties (other than as permitted by law) unless you authorize us to make that disclosure. Your authorization must be in writing. If you wish to authorize us to disclose your nonpublic personal financial information to nonaffiliated third parties, you may write us at: P.O. Box 41417, Philadelphia PA 19101-1417.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH DAVIS individually and on behalf of all others similarly situated, Plaintiff, vs. RIDDLE & ASSOCIATES, P.C. and JESSE RIDDLE, Defendants. | CIVIL ACTION NO. 07-CV-0284(LDD) CLASS ACTION |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SETTLEMENT CLASS CERTIFICATION, PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND NOTICE TO THE CLASS (UNCONTESTED)**

Plaintiff, Joseph Davis, moves the Court pursuant to Fed. R. Civ. P. 23 for preliminary approval of a class settlement reached in this matter involving alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or "Act"), 15 U.S.C. §§ 1692, *et seq*. Plaintiff's claims arise out of a collection letter sent by Defendants Riddle & Associates, P.C. and Jesse Riddle (hereinafter collectively referred to as "Riddle" or "Defendants") stating "[i]f you request proof of the debt . . . the law requires our firm to suspend our efforts to collect the debt (through litigation or otherwise)" where suit was not and could not be commenced because suit was time-barred. Plaintiff avers in his Second Amended Complaint (corrected version) that Riddle's letter violates the FDCPA's prohibitions against: (a) the use of false, deceptive, or misleading representations or means in connection with the collection of any debt, 15 U.S.C. § 1692e; (b) threatening to take any action that could not legally be taken or that was not intended to be taken, 15 U.S.C. § 1692e(5); and (c) the use of false representations or deceptive means in an attempt to collect a debt alleged due, 15 U.S.C. § 1692e(10).

1

The parties have now reached a settlement, subject to approval of this Court. The settlement was reached after extensive negotiations between the parties. The settlement terms are fair, reasonable, and adequate, and in the best interest of the Class.

The terms of the Settlement Agreement are set forth in the attached Agreement of Settlement (hereinafter "Settlement Agreement") and include the following: (a) Defendants stipulate to certification of the Class designated in the agreement of settlement, to Plaintiff Davis serving as the class representative, and to Cary L. Flitter and Theodore E. Lorenz, and the law firm of Lundy, Flitter, Beldecos & Berger, PC serving as class counsel; (b) Defendants will pay $25,000.00 to the Class; (c) Defendants will pay the costs associated with the administration of the settlement, and First Class, Inc. of Chicago will serve as the class administrator; (d) notice will be by mail to a class of approximately 6,324 individuals indentified by Defendants who received the challenged letter during the class period, as defined in the Settlement Agreement; (e) Defendant will pay Plaintiff Davis $1,000.00 on his individual statutory claim, $1,000.00 as an incentive award for serving as Class Plaintiff, plus such amount as a Class Member may receive; (f) Defendants will pay reasonable class counsel fees and costs through the conclusion of the case, including its administration, in an amount to be agreed upon by counsel (and subject to Court approval) or awarded by the Court upon submission of a fee petition; the right to appeal an award by the District Court is retained; (g) Defendants have discontinued the use of the subject letter in connection with the collection of time-barred accounts and agree in the future not to include the phrase "through litigation or otherwise" in collection of time-barred accounts; (h) payments to the Class and Plaintiff as outlined in sections (b) through (e) above will be made to an interest bearing account within 14 days of the final approval; and (i) upon final approval by

the Court, the releasing persons release, acquit and forever discharge the released persons from all released claims as pled in the Second Amended Complaint – corrected version.

The relief sought in this Motion is uncontested by Defendants, who join in the request of certification of a settlement class and for preliminary approval. A copy of the signed Settlement Agreement is attached hereto as Exhibit "B." A copy of the proposed Order for Preliminary Approval is separately filed herewith as Exhibit "C." The proposed Class Notice is filed herewith as Exhibit "D."

The proposed Order for Preliminary Approval establishes certain dates and method for mailing notice to the class, the procedure and timing for administration and filing of objections, if any, to the settlement, or requests for exclusion by members of the Class.

For the reasons set forth more fully in the within Memorandum of Law, Plaintiff submits that the requirements of Rule 23 are met, that a settlement class should be certified, that preliminary approval of the settlement should be granted and notice permitted to issue to the Class.

## I.   **NATURE OF THE CASE**

Plaintiff Joseph Davis brings this case as a class action against Riddle & Associates, P.C. and Jesse Riddle for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §§ 1692 *et seq.* Plaintiff, individually and on behalf of all other consumers similarly situated, seeks damages and other relief against Riddle for its use of deceptive and unfair debt collection practices. Plaintiff has averred that Riddle routinely sends out collection notices with the language "[i]f you request proof of the debt . . . the law requires our firm to suspend our efforts to collect the debt (through litigation or otherwise)" where suit was not and could not be commenced because suit was time-barred. A copy of the collection notice is appended hereto as

Exhibit "A." As such, the notices violate the FDCPA's prohibitions against: (a) the use of false, deceptive, or misleading representations or means in connection with the collection of any debt, 15 U.S.C. § 1692e; (b) threatening to take any action that could not legally be taken or that was not intended to be taken, 15 U.S.C. § 1692e(5); and (c) the use of false representations or deceptive means in an attempt to collect a debt alleged due, 15 U.S.C. § 1692e(10).

Plaintiff brings this action on his own behalf and on behalf of a class pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. While Riddle denies liability and damages, this settlement, if approved, will avoid the need for the Court or a jury to determine liability, or the extent of damages to be awarded. Riddle represents that the class of identifiable recipients contains approximately 6,324 individuals who were sent the offending letters, and has provided a list of the names and addresses of the individuals. The class is defined as: (a) all persons with addresses in the Commonwealth of Pennsylvania; (b) to whom letters were sent by Riddle & Associates, P.C. ("Riddle"); (c) in an attempt to collect a debt alleged to be due; (d) incurred primarily for personal, family or household purposes; (e) bearing a date between March 6, 2006 and April 21, 2008; (f) which states "the law requires our firm to suspend our efforts to collect the debt (through litigation or otherwise)" or substantially identical language; and (g) which references a "last charge/paid date" more than four years before the date of the letter. (*See* Second Am. Compl. – Corrected Version ¶ 19, hereinafter referred to as "2d Am. Compl.," Doc. No. 29).

The FDCPA provides that statutory damages are capped at the lesser of 1% of the debt collector's net worth or $500,000.00. 15 U.S.C. § 1692k(a)(2)(B). In settlement of this suit, the

Defendants have agreed to pay the Class $25,000.00 to be distributed to those who file a claim form.[1] (Sett. Agrmt. ¶ 4(a)).

Additionally, as part of the settlement, Defendants have agreed to pay $1,000.00 to Davis for his individual claim, and $1,000.00 as an incentive award. (Sett. Agrmt. ¶ 4(b)). *See Fry v. Hayt, Hayt and Landau*, 198 F.R.D. 461, 472 (E.D. Pa. 2000) (holding named plaintiff, may, under FDCPA, receive his statutory recovery plus any share of class recovery under unique wording of Act); *Bonett v. Educ. Debt Servs. Inc.*, Class Action No. 01-6528, 2003 U.S. Dist. LEXIS 9757 (E.D. Pa. May 9, 2003). Defendants will also pay class fees and costs on a lodestar basis through to completion of this matter, in an amount either to be agreed upon by the parties and approved by the Court, or by the court on motion, as permitted under 15 U.S.C. § 1692k. (Sett. Agrmt. ¶ 9). Defendants have also represented that they have discontinued the use of the challenged collection letter and agree in the future not to include the phrase "through litigation or otherwise" in collection of time-barred accounts.

For the reasons which follow, Plaintiff submits that this is a favorable settlement for the Class. Certification of a settlement class should be granted and the settlement preliminarily approved.

## II.   NATURE OF PLAINTIFF'S CLAIMS UNDER THE ACT

### A.   Purpose and Background of the FDCPA

In enacting the FDCPA, Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 USC § 1692(a) (recitation of Congressional findings and declaration of purpose). The legislature determined that "means other than misrepresentation or other abusive debt collection practices are available

---

[1] There is a significant dispute as to Riddle's net worth. Riddle says he is worthless, but Plaintiff asserts that Riddle has net worth, even if held in the names of others. The class settlement figure represents just that.

for the effective collection of debts." 15 U.S.C. § 1692(c); *Wilson v Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000). *See also Piper v Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005) (holding FDCPA provides a remedy for consumers who have been subjected to unfair or deceptive collection practices); *F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007). Among the practices prohibited by the FDCPA is the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt," including the threat to take any action that could not legally be taken or that was not intended to be taken upon a time-barred debt. 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10). *See also Crossley v. Lieberman*, 868 F.2d 566, 571 (3d Cir. 1989). The Act's purpose is to eliminate such practices. 15 U.S.C. § 1692(e); *Russell v. Equifax ARS*, 74 F.3d 30, 33 (2d Cir. 1996).

This Court has observed that it was Congress' intent that the FDCPA "should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). Similarly, Congress intended the FDCPA to be enforced by the private class action mechanism. *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). Recognizing and implementing the remedial purpose of the legislation, this Court has held that the Act is to be construed liberally so as to effect its purpose. *Brown v. Card Service Center*, 464 F.3d 450, 453 (3d Cir. 2006).

The threshold complaint here is that Riddle sent a collection notice which falsely implies that litigation to collect a time-barred account has been or may be started. The FDCPA prohibits debt collectors from making false, deceptive, or misleading statements in an attempt to collect a debt alleged due. 15 U.S.C. §1692e. In *Brown*, for example, the Third Circuit held that a collection letter which stated that "[r]efusal to cooperate could result in a legal suit being filed for collection of the account" was deceptive or misleading under the FDCPA. 464 F.3d at 455.

In reaching that conclusion, the Court of Appeals reaffirmed that a debt collection letter is deceptive under the Act where "it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Id.* (*citing Quadramed*, 225 F.3d at 254).

While Riddle denies liability, the parties have reached a class-wide settlement regarding the alleged violation under the FDCPA.  (Ex. B).

## III.    ELEMENTS FOR CLASS CERTIFICATION ARE MET

### A.    Standard for Class Certification

In order for a class to be certified, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 249 (E.D. Pa. 2006); *Parks v. Portnoff Law Associates, Ltd.*, 210 F.R.D. at 149.

Rule 23 must be liberally interpreted and read in favor of allowing a class action.  *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 626 (E.D. Pa. 1994) (consumer class action).

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§ 1692k(a) and (b) for FDCPA class action cases.  *Weiss v. Regal Collections*, 385 F.3d 337 (3d Cir. 2004).  And, of course, challenges to the legality of collection notices have been routinely certified.  *See Parks v. Portnoff Law Assocs.,* 210 F.R.D. 146, 152 (E.D. Pa. 2002); *Carr v. Trans Union Corp.*, 94-0022, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. Jan. 12, 1995)(FDCPA class certified regarding defendant's transmission of misleading collection notices to consumers); *Labbate-D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451 (E.D. N.Y. 1996)(same).

**B.**    **The Proposed Class Meets the Requirements for Certification**

    **1.**    **Rule 23(a)(1) -- Numerosity**

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3rd Cir. 1984). "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill. 1986). Where the class numbers 25 or more, joinder is usually impracticable. *See Sala v. National Railroad Passenger Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988)(40-50 sufficient). It is not necessary that the precise number of class members be known, and a class action may proceed "where common sense or common knowledge indicates that it is large." *Colbert v. TransUnion Corp.*, 93-6106, 1995 U.S. Dist. LEXIS 578, at *4 (E.D. Pa. Jan. 12, 1995). Our Court of Appeals has held that generally a class with more than 40 satisfies the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

"[W]here the exact size of the class is unknown, but it is general knowledge or common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 *Newberg on Class Actions* (3d ed. 1992), §7.22.A.

After significant discovery practice, Defendants identified approximately 6,324 putative class members who reside in Pennsylvania and who received the offending letter between March 6, 2006 and April 21, 2008. Defendants have provided a list of the names and last known addresses of the identified class members. Joinder of all 6,324 members of the class is impracticable and, accordingly, Rule 23(a)(1)'s numerosity requirement has been readily met.

    **2.**    **Rule 23(a)(2) -- Commonality**

Rule 23(a)(2) requires that there be a common question of law <u>or</u> fact. *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 57 (3rd Cir. 1994); *Bradburn Parent/Teacher Stores, Inc. v. 3M*,

02-7676, 2004 U.S. Dist. LEXIS 16193, at *5 (E.D. Pa. Aug. 17, 2004).  A common nucleus of

operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Where the defendant has engaged in standardized conduct towards members of the proposed

class by mailing to them allegedly illegal form letters or documents, the commonality

requirement is generally met. *McCall*, 236 F.R.D. at 250; *Carr v. Trans Union*, 94-0022, 1995

U.S. Dist. LEXIS 567 (E.D. Pa. Jan. 12, 1995) .  As one Court of Appeals has stated in a similar

case:

> Common nuclei of fact are typically manifest where, like in
> the case sub judice, the defendants have engaged in
> standardized conduct towards members of the proposed
> class by mailing to them allegedly illegal form letters or
> documents.

*Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998) (citations omitted).

Not all factual or legal questions raised in the litigation need be common so long as at

least one issue is common to all class members. *Baby Neal*, 43 F.3d at 56-57; *Lake v. First

Nationwide Bank*, 156 F.R.D. 615, 624 (E.D. Pa. 1994); *Tenuto v. Transworld Systems, Inc.*, 99-

4228, 2000 U.S. Dist. LEXIS 14344, at *7 (E.D. Pa., Oct. 2, 2000) (holding consumer's theory

which rests upon  the "same facts about the [collection] letter and defendant's collection

practices" towards the class members establishes commonality for FDCPA class).

The common issue is whether Riddle violated the FDCPA in connection with the

collection of an alleged debt by mailing collection notices to class members with language which

implies that Riddle has or may commence litigation on a time-barred account.

### 3.   Rule 23(a)(3) -- Typicality

Rule 23(a)(3) requires that the claims of the named plaintiff be typical of the claims of

the class. *McCall*, 236 F.R.D. at 250; *Lake*, 156 F.R.D. at 624.  A plaintiff's claim is typical if it

arises from the same event or practice or course of conduct that gives rise to the claims of other

class members and his or her claims are based on the same legal theory. *Baby Neal*, 43 F.3d at

57. The typicality requirement may be satisfied even if there are some factual distinctions

between the claims of the named plaintiffs and those of other class members. *Id.* at 57-58. *See*

*also Stewart v. Associates Consumer Discount Co.,* 183 F.R.D. 189, 196 (E.D. Pa. 1998).  Here,

all class members received a substantially identical letter which forms the basis of the class

claim.

Typicality is inherent in the class definition, i.e., each of the class members was subjected

to the same violation as the named Plaintiff.  All class members' claims arise from the same

practices by Defendant which gave rise to Davis' claims - each class member was sent a letter

from Riddle with the same deceptive or misleading implication that Riddle has or may

commence litigation on a time-barred account. *See McCall*, 236 F.R.D. at 250.  This prong is

especially easy to meet here because the claim does not turn on Davis's own subjective reaction,

but only that of the hypothetical least sophisticated consumer. *Id.*  Moreover, there are no unique

facts or circumstances that would render Davis atypical.  The typicality requirement is met.

### 4.   Rule 23(a)(4) -- Adequacy Of Representation

The rule also requires that the named plaintiff provide fair and adequate protection for the

interests of the class. *Grasty v. Amalgamated Clothing and Textile Workers Union, AFL-CIO,*

*CLC*, 828 F.2d 123, 128 (3rd Cir. 1987).  That protection involves two factors: (1) whether

plaintiff's counsel is qualified, experienced, and generally able to conduct the proposed

litigation, and (2) whether the plaintiff has interests antagonistic to those of the class. *See McCall*, 236 F.R.D. at 250; *Ciccarone v. B.J. Marchese, Inc.,* 03-cv-1660, 2004 U.S. Dist. LEXIS 26489, at *10-11 (E.D. Pa. Dec. 14, 2004) (identity theft class); *Lake*, 156 F.R.D. at 624 (*citing Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)).  Both prongs are readily met.

First, Davis is represented by counsel experienced in consumer class action litigation. Cary L. Flitter and Lundy, Flitter, Beldecos & Berger, P.C. have been approved as competent counsel by this Court and others in well over a dozen consumer class actions.  Flitter has presented at scores of lectures and CLE's regionally and nationally for over 10 years.  Flitter teaches Consumer Credit Litigation at Widener University School of Law (adjunct faculty) and is co-author of *Pennsylvania Consumer Law*, Geo. Bisel Publishing Co.  A full statement of qualifications is included within the Certification of Cary L. Flitter attached.

Mr. Davis and the Class will also be represented by Theodore E. Lorenz of the Lundy, Flitter firm.  Mr. Lorenz has experience as a judicial clerk and as Deputy Attorney General for the Commonwealth of Pennsylvania.  Mr. Lorenz is an experienced litigator.  Mr. Lorenz was approved as class co-counsel in the matters of *McCall,* 236 F.R.D. at 250, *Dotson v. MRS Associates Inc.*, 06-cv-615 (E.D. Pa. 2006), *Townes v. NCO Financial Systems, Inc.*, 06-cv-1305 (E.D. Pa. 2006), and *Weinstock v. Inovision-MEDCLR Portfolio Group, et al.*, 05-cv-6392 (E.D. Pa. 2007).  These cases also arise under the Consumer Credit Protection Act.  Mr. Lorenz has been directly involved in all aspects of this case.  Mr. Lorenz's credentials are more fully set forth in his Certification filed herewith.

Second, there is nothing to suggest that Plaintiff Davis has any interest antagonistic to the class.  Mr. Davis is prepared to vigorously pursue this lawsuit filed on behalf of himself and the class of Pennsylvania residents designated in the Complaint.  To date, Plaintiff's counsel has

taken the depositions in Utah of Jesse Riddle, Riddle & Associates, and David Wood -- Riddle's compliance attorney. Plaintiff has also conducted written class discovery.

There are no individualized issues, for example, of reliance or intent. Given the identical nature of the claims between the Plaintiff and the Class Members, there is no potential for conflicting interests in the class action. *See Colbert*, 2005 U.S. Dist. LEXIS 578 at *6-7.

Plaintiff respectfully submits that the adequacy prong is readily met, as are all of the elements of Rule 23(a).

### 5.    Rule 23(b)(3) -- Common Questions Of Law Or Fact Predominate

Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 625 (3rd Cir. 1996), *aff'd sub nom Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). This criterion is normally satisfied when there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *See Lake*, 156 F.R.D. at 625. In this case, the "common nucleus of operative fact" is that all class members, by definition, were sent letters from Riddle that contained the same deceptive and misleading language in connection with the collection of an alleged consumer debt and, thus, were subjected to the same practices as Mr. Davis. *McCall*, 236 F.R.D. at 254(concluding that the "question of whether the letter would have been deceiving to the least sophisticated consumer is common to claims of all class members").

Predominance is generally established in cases dealing with the legality of standardized documents and practices because the document is the focal point of the analysis. *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 111-12 (E.D. Pa. 2002)(FDCPA class, predominance readily met). Although individual damages computation will generally <u>not</u>

impede class certification, plaintiff notes that the nature of the remedy -- a single class-wide damages remedy -- avoids any concern over individualized damage calculations. 15 U.S.C. §1692k(a)(2); *Colbert,* 1995 U.S. Dist. LEXIS 578 at *7-8 (observing "the [FDCPA] provides for class-wide awards, obviating the need for calculating individual damages).

As the court stated in *Labbate-D'Alauro,* 168 F.R.D. at 458:

> In the present case it is the use of standardized debt collection letters that have given rise to the plaintiff's claim. The questions of law and fact involved in this action relate to the use of the debt collection letters admittedly mailed by defendant to the proposed class. These common questions of law and fact surrounding the contents and mailing of these letters predominate over individual issues. Accordingly, the Court finds that the plaintiff has satisfied this prong of Fed. R. Civ. P. 23(b)(3).

In this case it is clear that both the issues of fact and the issues of law are straight forward, and predominate.

**6.   Rule 23(b)(3) -- Class Action Is Superior To Other Available Methods To Resolve This Controversy**

Superiority is another element of class certification pursuant to Rule 23(b)(3). *In re Prudential Ins. Co. of America Sales Practices Litigation,* 148 F.3d 283, 315 (3rd Cir. 1998); *Lake,* 156 F.R.D. at 625.  Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Lake,* 156 F.R.D. at 625-26.  It is proper for a court, in deciding the best available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Id.* at 626.

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual debtor subjected to Defendants' practices.  Class actions are simply a more efficient and consistent means of trying the legality of a collection notice. *Labbate-D'Alauro,* 168 F.R.D. at 459; *Tenuto,* 2000 U.S. Dist. LEXIS 14344.

13

The Third Circuit has recognized the efficacy of FDCPA class actions where the individual's claim is small:

> A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from the recovery." The Supreme Court also commented that "[c]lass actions ... may permit the plaintiffs to pool claims which would be uneconomical to litigate individually. For example, this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in Court if a class action were not available." This "[c]ost-spreading can also enhance the means for private attorney general enforcement and the resulting deterrence of wrongdoing."

*Weiss*, 385 F.3d at 344-45. One of the primary functions of the class suit is to provide a device for vindicating claims, which, taken individually, are too small to justify legal action but which are of significant size if taken as a group. *Id.; Lake*, 156 F.R.D. at 628-29.

As one Court observed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or rights. A class action solves of this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997), *quoted with approval in Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *accord Weiss,* 385 F.3d at 344-45. Moreover, Congress has provided in the class action damages provision that no minimum individual recovery shall apply. 15 U.S.C. § 1692k(a)(2)(B). Here, there will be a settlement fund of $25,000.00, while not large in absolute terms, it is significant in light of Riddle's professed low or zero net worth and the statutory scheme that caps recovery at 1% of net worth.

Counsel submits that a 10% claim rate is not atypical. At that figure, each claimant should receive about $40.00. This is a superior way to proceed.

7. **Rule 23(g) Factors**

Rule 23, as amended, requires that this Court "must consider" four additional factors in appointing class counsel. *See* Fed. R. Civ. P. 23(g)(1)(C)(as amended December 1, 2003).

In the Certification of Cary L. Flitter filed herewith, counsel attests to the following: (a) the work counsel has done in identifying or investigating the potential claims; (b) counsel's experience in handling class actions, other complex litigation and claims of these types asserted in the action; (c) counsel's knowledge of the applicable law; (d) the resources that counsel has committed to representing the class.

This Certification reflects that Plaintiff's counsel has spent considerable effort in identifying and investigating potential claims and has concluded that the instant claims under 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10) are the only viable claims to be lodged. This certification also recites counsel's handling of many, many other fair debt and other consumer credit matters, and recognition by this Court and others of capable handling of assorted consumer class cases. This certification speaks to Plaintiff's counsel's "knowledge of the applicable law" by over 25 years of practice, university and law faculty appointments, authorship, and by lectures and CLE trainings presented in the region and throughout the country.

The Flitter certification speaks to the resources that counsel has already committed to this case. Class Counsel spent significant time, effort, and costs addressing a variety of motions filed by Defense Counsel and conducting discovery. Defendants filed a motion for judgment on the pleading and for summary judgment which required Class Counsel to respond. When Defendants failed to provide responsive discovery, Class Counsel filed a motion to compel

discovery. Defense Counsel sought to stay discovery, which Class Counsel opposed. Class Counsel traveled to Utah and took the depositions of Jesse Riddle, Riddle & Associates, P.C., and David Wood. Class Counsel also moved to strike a specious offer of judgment filed by defendants.

Based on the foregoing, the mandate of Rule 23(g), as amended, has been fulfilled.

## IV.    SUMMARY OF SETTLEMENT

The parties regularly discussed the potential for settlement in this action throughout the course of the litigation. The key settlement terms, subject to Court approval, are as follows:

(a) Defendants stipulate to the class designated in the Settlement Agreement, to Plaintiff Davis serving as the class representative, and to Cary L. Flitter, Theodore E. Lorenz, and the law firm of Lundy, Flitter, Beldecos & Berger, PC serving as class counsel;

(b) Defendants will make a cash payment of $25,000.00 into a class settlement fund, at interest, as statutory damages under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k, to be available on a claims made basis. There will be no reversion of any monies to the Defendants. Any unclaimed or undistributable funds remaining after distribution of checks to class members shall be paid over to a *cy pres* recipient as agreed upon by the parties and approved by the Court. (Sett. Agrmt. ¶ 6);

(c) Defendants will pay Plaintiff Davis $1,000.00 on his individual statutory claim and $1,000.00 as an incentive award for serving as Class Plaintiff, plus such amount as a Class Member may receive. (Sett. Agrmt. ¶ 4(b));

(d) notice will be by mail to a class of approximately 6,324 individuals identified by Defendants who received the challenged letter during the class period, as defined in the Settlement Agreement;

(e) Defendants will pay the costs associated with the administration of the settlement. The parties have agreed upon First Class, Inc., an experienced class action administrator, to handle notice and administration. (Sett. Agrmt. ¶ 10);

(f) Defendants will pay reasonable class counsel fees and costs through the conclusion of the case, including its administration, in an amount to be agreed upon by counsel (and subject to Court approval) or awarded by the Court upon submission of a fee petition. The parties are not now in agreement on amount. Class Counsel will seek an award of fees and costs of up to $125,000 based on the lodestar through the final approval hearing. (Sett. Agrmt. ¶ 9). The proposed Class Notice identifies $125,000 in fees and costs through final approval, as Rule 23(h) requires;

(g) Defendants have discontinued the use of the subject letter in connection with the collection of time-barred accounts and agree in future not to include the phrase "through litigation or otherwise" in collection of time-barred accounts.

Even though Defendants have denied liability, they each join in this request for class certification and preliminary approval for settlement purposes. In the event that the settlement is not approved, or as may be otherwise provided in the Settlement Agreement, the parties stipulate that there shall be no settlement and the action shall be restored to the litigation posture *status quo ante* as it existed on the date the instant motion was submitted, all of the parties' respective legal rights and obligations preserved.

## V.     THE SETTLEMENT SATISFIES THE REQUIREMENTS FOR PRELIMINARY APPROVAL.

### A.     Standards for Preliminary Approval

When a proposed class-wide settlement is reached, it must be submitted to the Court for approval. 2 H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) § 11.41; *Oslan v.*

17

*Law Offices of Mitchell N. Kay*, 232 F. Supp. 2d 436, 439-40 (E.D. Pa. 2002).  Preliminary

approval is the first of essentially three steps that comprise the approval procedure for settlement

of a class action.  The second step is the dissemination of notice of the settlement to all Class

members.  The third step is a settlement approval or final fairness hearing.  *See Manual for*

*Complex Litigation* § 21.632-633 (4th ed. 2004).

The question presented on a motion for preliminary approval of a proposed class action

settlement is whether the proposed settlement appears fair and reasonable.  *Manual for Complex*

*Litigation* § 21.632; *Parks*, 243 F. Supp. 2d at 249. Preliminary approval is merely the

prerequisite to giving notice so that "the proposed settlement … may be submitted to members of

the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am.*

*Radiator and Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970), *quoted with*

*approval in Bell Atlantic v. Bolger*, 2 F.3d 1304, 1318 (3d Cir. 1993).

The approval of a proposed settlement of a class action is a matter within the broad

discretion of the Trial Court. *In re Warafin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir.

2004).  As is the case with the settlement of litigation generally, settlements of class actions are

favored in the law.  *See In re General Motors Truck Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

Preliminary approval does not require the Court to affirmatively answer the ultimate question of

whether a proposed settlement is fair, reasonable and adequate.  That determination is made only

after notice of the settlement has been given to the members of the Class and they have been

given an opportunity to voice their views of the settlement, or to be excluded from the Class.  *See*

*Manual for Complex Litigation* § 21.632.  See also 5-23 *Moore's Federal Practice*, ¶ 23.162 (3d

ed. 2006); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist.

LEXIS 29163, at *8-9 (E.D. Pa. May 11, 2004).

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of the terms of the compromise with the likely rewards of litigation. *General Motors,* 55 F.3d at 796; *Collier v. Montgomery County,* 192 F.R.D. 176, 184 (E.D. Pa. 2000) (*citing Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)). Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See Collier,* 192 F.R.D. at 186; *Gaskin v. Pennsylvania,* 389 F. Supp. 2d 628, 643-44 (E.D. Pa. 2005). Class counsel, who fully endorse this settlement, have been found to be adequate class counsel in many other matters before the Court. (Certifications of Cary L. Flitter and Theodore E. Lorenz, submitted herewith). There is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval. *See Gaskin,* 389 F. Supp. 2d at 643-44. *See also Newberg on Class Actions,* § 11.41.

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be "the result of good faith, arms length negotiations." *Collier,* 192 F.R.D. at 184; *Tenuto,* 2000 U.S. Dist. LEXIS 14344. "If the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement." *Id. See also General Motors,* 55 F.3d at 785-86. Here, the proposed settlement easily meets these standards, and the motion for preliminary approval should be granted.

**B.     The Terms of the Proposed Settlement are Fair – Indeed Very Favorable**.

The proposed settlement is reasonable and fair- and actually quite favorable.  The

monetary relief to be paid for class wide damages is $25,000.00 on a claims made basis.  Given

the nature of the litigation and the statutory cap on available damages, at 1% of net worth, this

settlement is well within the range of other settlements to warrant approval.  *See, e.g., In re Corel

Corp. Securities Litig.*, 293 F. Supp. 2d 484, 489-90 (E.D. Pa. 2003).  There will be no reverter

to Defendants. Any remaining funds will be distributed *cy pres*.

Plaintiff's counsel fees are available as of right under the FDCPA. 15 U.S.C. §1692k(a);

*Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). Defendants have agreed to pay statutory

counsel fees on a lodestar basis (and costs) in an amount to be agreement upon, subject to the

Court's approval, or in an amount determined by the Court should the parties be unable to agree.[2]

Additionally, Defendants represent that they have discontinued using the challenged form of

letter and will not use the offending language in the future.  (Sett. Agrmt. ¶ 4(c)).  The class

benefits from Defendants' positive representation in the court papers that the offending language

is and will remain out of use.

Again, preliminary approval of the proposed settlement of the class action is merely the

determination of whether the settlement is in the range of possible approval.  Although the

benefits of this settlement are manifest, the Court need not reach any ultimate conclusion on the

merits or the wisdom of the settlement until after notice.  *See In re Auto. Refinishing Paint

Antitrust Litigation*, 2004 U.S. Dist. LEXIS 29163.  Plainly, there is no reason to doubt the

fairness and adequacy of this recommended settlement.  Preliminary approval should be granted.

A form of Order is submitted herewith.

---

[2] The copious discovery contests and motions filed by these Defendants required significant expenditure of legal time, effort and expense.  Pursuant to Rule 23(h), the Notice describes Class Counsel's fees and costs of a sum not to exceed $125,000 through final approval.

## VI.   CLASS NOTICE

With the Settlement Agreement and this motion, Plaintiff submits a proposed form of notice to the class.  A true and correct copy of the proposed Class Notice is appended hereto as Exhibit "D."  (Of course, the blanks for dates will be filled in before mailing).  In plain-English, the notice informs class members regarding (a) formation of the class; (b) the class definition; (c) claims, defenses and issues in the case; (d) terms of the proposed settlement; (e) the request for an award of attorney's fees and expenses to class counsel; (f) the agreed individual settlement payment to representative Plaintiff; (g) the class member's right to opt-out, and thereby not participate in the proposed settlement; (h) class member's right to appear and object to the proposed settlement; (i) the time, date and location of the final approval hearing; and (j) class member's right to appear at the final approval hearing in favor of or in opposition to the proposed settlement.

The proposed notice comports with the requirements of Rule 23(c) and 23(e) as amended, and with the Court of Appeals' decision in *Wachtel v. Guardian Life Ins. Co. of America*, 453 F.3d 179, 185 n.6 (3d Cir. 2006), recommending plain-English class notices.  The notice is clear and reader friendly, and provides class members with sufficient information to make an intelligent decision as to whether to remain in the class, opt-out, or object to any aspect of the proposed settlement.  Plaintiff has looked to, indeed borrowed from, the recommended notices provided by the Federal Judicial Center's website, www.fjc.gov.  Administration of notice, opt-outs, objections and settlement checks will be handled by First Class, Inc. an experienced Claims Administrator based in Chicago.  (Sett. Agrmt. ¶ 10).

Plaintiff proposes notice by first class mail, which comports with Fed. R. Civ. P. 23(c)(2) requiring the best notice practicable under the circumstances. *See Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005) (approving mail notice in FDCPA class settlement).

## VII.   CONCLUSION

The proposed settlement puts an end to this litigation, falls well within the range of a fair, reasonable and adequate award.  Preliminary approval should be granted, and the class notice approved and directed in the form proffered.  Defendants consent to preliminary approval. Further, the proposed settlement class meets the requirements of Rules 23(a) as well as Rule 23(b)(3).  Plaintiff Joseph Davis respectfully requests that the Court certify the settlement class under Rule 23(b)(3).

Date:  April 21, 2008

*/s/ Cary L. Flitter(CLF 5997)*
CARY L. FLITTER
THEODORE E. LORENZ

LUNDY, FLITTER,
BELDECOS & BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA 19072
(610) 822-0782
Attorneys for Plaintiff and the Class

clf\davis-riddle\pleadings\certification of clf in support of motion for preliminary approval042108

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH DAVIS, individually and<br>on behalf of all others similarly situated,<br>Plaintiff, | |
| vs. | CIVIL ACTION NO. 07-CV-0284(LDD) |
| RIDDLE & ASSOCIATES, P.C. and<br>JESSE RIDDLE,<br>Defendants. | CLASS ACTION |

## CERTIFICATION OF CARY L. FLITTER

I, CARY L. FLITTER, an adult individual, certify the following to be true and correct:

1.      I am a member of the bar of this Court in good standing and counsel for plaintiff Joseph Davis and the Class in the above captioned action.  I offer this Certification in support of plaintiff's motion for preliminary approval of class settlement and certification of a settlement class.

2.      A true and correct copy of the Settlement Agreement and Release document signed by the plaintiff is appended to the motion for preliminary approval as Exhibit "A".

**Settlement Summary**

3.      In my view, as an experienced consumer credit class action litigator, the settlement in this case represents a very good result for the class given the parameters of the damages provision of the FDCPA.  The class settlement fund of $25,000.00,  plus costs of administration and payment of reasonable class counsel fees over and above the Settlement Fund plus a modest payment to Joseph Davis represents a very positive resolution.

4.      The settlement also provides that Riddle will discontinue sending collection letters to Pennsylvania residents which reference litigation over time-barred debts. (Sett. Agrmt. ¶4C).  Class counsel fees and costs under the Act have not been agreed upon at this time.   My

- 1 -

firm will seek statutory fees and costs of an amount not to exceed $125,000.00 on a lodestar

basis, through final approval. This request for reimbursement of fees and costs shall be disclosed

in the (proposed) class notice per F.R.Civ.P. 23(h).

5.        Consistent with F.R.Civ.P. 23(g), I reviewed all possible avenues and theories of

recovery. I concluded, based upon my experience and judgment that a FDCPA (only) claim

represented the best option for maximal class recovery.

6.        *Counsel's experience in handling class actions, other complex litigation, and*

*claims of the types asserted in the action:* I have handled in the practice of law easily in excess

of five hundred (500) cases arising under the FDCPA, both in this jurisdiction and elsewhere. I

have been appointed class counsel or co-counsel in over a dozen FDCPA class cases, and have

been class counsel or co-counsel (and in several cases defense counsel) in at least another ten

(10) class cases. To avoid duplication, I refer to paragraph 21 and 22 below. Additionally, I

have, in the course of over 27 years of legal practice, handled a variety of complex litigation

cases, equally or more complex than this. These cases arose in a wide variety of commercial

contexts, including consumer credit litigation statutes, unfair competition, trade cases, securities

cases, civil rights and employment litigation and other matters. I have tried at least twenty (20)

civil jury cases to verdict in consumer, commercial, civil rights, contract and other civil matters

in this district and elsewhere.

7.        *Counsel's knowledge of the applicable law*[1]: I believe I can fairly say that I

possess a thorough and in-depth knowledge of the Fair Debt Collections Practices Act. I have

lectured on Consumer Law, including Fair Debt Collection Practices Act matters for over ten

(10) years, and have lectured in at least twenty-five (25) venues and sessions throughout the

---

[1] I have always felt there was something unseemly about a lawyer touting his own "knowledge" and professional credentials. This should be the place of others. However, Rule 23(g)(1)(C)(i) now requires it and, in obedience to the Rule, counsel follows it.

United States.  These have, in the main, been CLE trainings provided for lawyers at various state and local bar associations.  I have also presented consumer credit litigation topics at many national conferences sponsored by the American Bar Association ("ABA"), The Practicing Law Institute, ("PLI") The National Consumer Law Center ("NCLC") and other professional organizations.  Occasionally, I have lectured for lay or educational groups.

Since 1999 I have been on the adjunct faculty of Widener University School of Law where I teach Fair Debt Collection Practices Act as part of the Consumer Law and Litigation curriculum which I formulated there.  I am a contributing author to *Pennsylvania Consumer Law* by Carter, Geo. Bisel Publishing Co., the leading treatise in Pennsylvania on consumer law issues.  I am a contributor to *Consumer Class Actions, 5th Ed.*, published by the National Consumer Law Center, Boston, Massachusetts.

8.       *The resources counsel will commit to representing the class*: I am a partner in a nine (9) lawyer law firm in suburban Philadelphia.  My firm, Lundy, Flitter, Beldecos & Berger, P.C. is an established commercial law firm.  Although my firm has adequate resources to fund a class case and class notice, under the terms of the proposed settlement, Riddle will fund. (Sett. Agrmt. ¶10).

**Qualifications of Counsel**

9.       I am the partner responsible for litigation with the law firm of Lundy, Flitter, Beldecos & Berger, P.C. with offices in Montgomery County, Pennsylvania and Burlington County, New Jersey.  My practice entails a variety of consumer credit matters and other diverse commercial disputes, including consumer class action.

**Bar Admissions**

10.      I have been admitted to the bar for 27 years (1981).  I am admitted to practice and in good standing before the United States Supreme Court (1999), the United States Court of

Appeals for the Third Circuit (1983), the Fourth Circuit (1990), and the Eighth Circuit (2001);

the United States District Court for the Eastern District of Pennsylvania (1981), Middle District

of Pennsylvania (1995), District of New Jersey (1981), and the District of Nebraska (2000); the

Supreme Court of Pennsylvania (1981) and the Supreme Court of New Jersey (1981).

**Teaching Appointments and Academic Guest Lectures**

11.     Widener University School of Law - Adjunct Professor, Consumer Finance

Litigation and Identity Theft including Fair Debt Collection Practices Act and federal practice

(1999 to present); Philadelphia University - Adjunct Professor, Commercial Law (1991 to 1998).

12.     Harvard Law School, Guest Lecturer, *Consumer Litigation Strategies and the*

*Law of Statutory Attorneys Fees*, March 2007; Temple University School of Law, Guest

Lecturer, *Automobile Dealer Finance Fraud*, October 2002-October 2006.

**Education**

13.     1976 - Philadelphia University - Bachelor of Science in Finance (Recipient, 1997

Hughes Award for the Advancement of Scholarship).  President, Alumni Board 1990-92.

Member, Board of Trustees, 1990-92.

          1981- Delaware Law School of Widener University - Juris Doctor (Recipient),

American Jurisprudence Award for Scholarship, Corporations and Partnerships (Recipient)

1998 Outstanding Service Award for dedication and service to the legal community;

          National Institute for Trial Advocacy:

          1986 - Trial Skills and Methods - University of Pennsylvania.

          1990 - Federal and State Court Motion Practice - University of Denver.

**Lectures/CLE Presentations**

**2007**

14.     Co-Presenter, *Civil Remedies for Identity Theft*, Widener University School of

-4-

Law, Wilmington, DE, August 2007; Presenter, *Permissible Uses of Consumer Credit Reports,*

National Association of Consumer Advocates Fair Credit Reporting Conference, Denver, CO,

May 2007; Course Planner and Co-Presenter: *Consumer Credit Litigation Developments,* Pa. Bar

Institute, Philadelphia and Allentown, PA, March 2007; Co-Presenter: *FDCPA Developments,*

*Ask the Experts,* National Association of Consumer Advocates Fair Debt Collection Practices

Conference, Tucson, Arizona, March, 2007;

**2006**

Course Planner and Co-Presenter, *FDCPA After Brown v. Card Service Center: What is*

*Deceptive?,* Pa. Bar Institute Webcast, Philadelphia, December, 2006; Co-Presenter,

*Developments in Class Trial Plans,* National Consumer Law Center Class Action Symposium,

Miami, FL, November, 2006; Presenter, *Impermissible Access to Consumer Credit Reports,*

National Association of Consumer Advocates, Las Vegas, NV, May, 2006; Co-Presenter, *Fair*

*Debt Collection Practices Act Developments, Ask the Experts,* National Association of Consumer

Advocates, Austin, TX,  February 2006;

**2005**

Course Planner & Co-Presenter, *Consumer Credit Litigation Developments,* Montgomery

Bar Association, Continuing Legal Education, November 2005; Co-Presenter, *Identity Theft,*

(Including FCRA Remedies) Pa. Bar Institute, Continuing Legal Education, Atlantic City, NJ,

August 2005; Co-Presenter, *Settling Complex Financial Services Class Actions,* and Co-

Presenter, *Developments in Automobile Financing & Leasing Litigation*, Practicing Law

Institute, 10th Annual Consumer Financial Services Litigation Institute, Chicago, IL, June 2005;

Course Planner, Co-Presenter, *Identity Theft:  Don't Be Their Next Victim,* Widener University

School of Law, Wilmington, DE, Continuing Legal Education, April, 2005; Presenter, *Fair Debt*

*Collection Practice Act Developments,* National Association of Consumer Advocates,

Washington, DC, March 2005;

**2004**

Co-Presenter, *Insurance Coverage for Consumer Credit Disputes*, National Consumer Law Center Annual Conference, Boston, MA, October 2004; Co-presenter, *Identity Theft,* Pa. Bar Institute, Continuing Legal Education, April 2004 Philadelphia (Simulcast to Harrisburg); Presenter, *Fair Debt Collection Practices Act Developments,* National Association of Consumer Advocates, Kansas City, MO, April 2004; Presenter, *Developments in Law of Access to Consumer Credit Reports,* National Association of Consumer Advocates Fair Credit Reporting Act Symposium, Chicago, IL, May 2004;

**2003**

*Civil Remedies for Identity Theft,* Montgomery Bar Association, Continuing Legal Education, October 2003; *Fair Debt Collection Practices Act ABC's*, National Consumer Rights Litigation Conference, Oakland, California, October 2003; Co-Presenter *Class Action Symposium: Developments in the Law of Plaintiff Adequacy Under Rule 23(a)(4)*, National Consumer Rights Litigation Conference, Oakland, California, October 2003; A *Primer on Consumer Law for the Bankruptcy Practitioner*, Pennsylvania Bar Institute Annual Bankruptcy Symposium, Harrisburg, PA, September 2003, Philadelphia, PA, August 2003; *A Current Look at Federal Court - - the Eastern District of Pennsylvania* with Hon. Edmund Ludwig and Hon. Linda Caracappa, Bucks County Bar Association, April 2003; Course Co-Planner and Presenter; *Developments in Statutory Attorneys Fees* with Hon. Lowell Reed and Timothy Myers, Esq., Montgomery Bar Association, April 2003;

**2002**

*Use of Expert Witnesses in Consumer Financial Services Litigation*, American Bar Association, Section on Consumer Financial Services @ Annual Conference, Washington, DC,

August, 2002; *Consumer Law Alternatives to Bankruptcy*, Pennsylvania Bar Institute, Annual

Bankruptcy Symposium, Philadelphia, Pennsylvania, August, 2002; Course Co-Planner and

Presenter: *Impermissible Access to Consumer Credit Reports*, National Association of Consumer

Advocates, Albuquerque, New Mexico, June 2002; *Auto Dealer Finance Fraud*, Montgomery

Bar Association, Debtor/Credit Committee Presentation, May 2002; Course Co-Planner and

Presenter: *Issues in Consumer Law, Consumer Credit Protection Act*, Iowa Legal Services

Corporation (simulcast to 10 locations), Council Bluffs, Iowa, February 2002;

**2001**

       *Consumer Law Developments 2001*, Montgomery Bar Association, Continuing Legal

Education - December 2001; *Issues in Using Financial Experts After Daubert and Kuhmo Tire*,

National Consumer Rights Litigation Conference,  Baltimore, Maryland - October 2001; Denver,

Colorado - October 2000; *Developments Under the Fair Credit Reporting Act*, National

Association of Consumer Advocates, Las Vegas, Nevada - June 2001;

**2000**

       *Statutory Attorney's Fees* with Honorable William H. Yohn, Jr. and Mark Kearney,

Esquire, Montgomery Bar Association - July 2000;

**1999**

       *Consumer Law for Fun & Profit*, Montgomery Bar Association, Continuing Legal

Education - 1999, 1998, 1997; *Statutory Attorney's Fees*, National Consumer Rights Litigation

Conference, Washington, DC - October 1999; San Francisco - 1996 (partial list).

## Publications

15.    Contributing author, *Pennsylvania Consumer Law* by Carolyn Carter, Bisel

Publishing Co., 2003, Supp. 2008.  This is the leading legal treatise in Pennsylvania on consumer

law issues.

16.    Contributor, *Consumer Class Actions*, 5th Ed., National Consumer Law Center,

Boston, MA.

17.    Legal Intelligencer - *When is a Lawyer a Debt Collector?* - February 2000; Legal

Intelligencer - *Consumer Protection Law Amendments Add Teeth* - March 1997; The National

Law Journal - *Statutory Attorney's Fees* - February 1999 (partial list).

## Quoted/Featured/Contributed

18.    New York Times - *Citing 15 Year Delay, Suit Seeks Action on Rebuilt* Wrecks -

Feb. 10, 2008 (automobiles); Time Magazine – *Sue Up or Shut Up!* – October 19, 2006 -

www.time.com/time/nation/printout/0,8816,1548158,00.html; Consumer Financial Services Law

Report – *A Dunning Letter that Could Propose Legal Action may Violate FDCPA* – October 18,

2006; ABA Journal EReport – *Coulda Woulda Shouldn'ta Debt Collectors Who Warn They*

*Could (But Don't) Sue May Run Afoul of Debt Act* – October 18, 2006 -

www.abanet.org/journal/ereport/oc13debt.html; Fox 29 TV News Consumer Alert:  *Local Car*

*Dealership Customers Victimized by ID Theft* – August, 2006; Consumer Financial Services Law

Report, *Do the Math:  FDCPA Class Action Award Depends on Statutory Language* – August,

2006; NBC10 TV News Consumer Alert - *Legal Redress for Fraudulent Sales* – April 11, 2006;

Debt Collection Compliance Alert:  *Avoid These Traps - - 6 Mistakes that Can Get You Sued* –

July 2005; Consumer Financial Services Law Report:  *Liability May Follow Deviation From*

*FDCPA Notice Language* – May 18, 2005; Consumer Financial Services Law Report:  *ID Theft*

*Claim Against Car Dealer Shifts Into Gear* – August 11, 2004; ; Philadelphia Inquirer,

*"Montgomery County Car Dealer to Face Class Action for Identity Theft"* – October 2002;

Consumer Financial Services Law Reporter, *"Advantages and Disadvantages of Using Expert Witnesses in Consumer Finance Litigation"* - August, 2002; Bankrate.com: *"Consumer Remedies Under the Fair Credit Billing Act"* - June 2002; NBC-10 TV News: *"Consumer Online Chat"* - January 2001; Fox-29 TV News: *"Automobile Financing Fraud"* - November 2000; CBS News Market Watch: *"Effect of Credit Repair Organizations Act"* October 2000; Fox-29 TV News: *"Predatory Lending"* - October 2000; Pennsylvania Lawyer Magazine: *"Sleuthing Through the Ledger"* - January/February 1999; Legal Intelligencer: *"Kelly: 9.5 Million Damage Range Not Specific Enough for Discovery"* - June 1998; Legal Intelligencer: *"Class Action Settlement Worked out with Bally's Collection Attorney"* - July 1997.

**Bar Association Appointments/Honors**

19.     I serve as the year 2008 Co-Chair of the Federal Courts Committee of the Montgomery Bar Association.  In that capacity, I assist in liaison projects between the County Bar and the Eastern District bench; events and visits by our judges and planning and presentation of CLE program(s) on federal practice developments.  I have also served as Co-Chair of that committee in 2000 and 2002-2007.  We were honored with Committee of the Year Award (2000) by the president of the Montgomery Bar Association.

20.     I was appointed by (then) Chief Judge Giles to the E.D. Pa. Magistrate Judge Retention Panel, 2003-04.  I was appointed by Chief Judge Bartle to the Magistrate Judge Selection Panel, 2006.

21.     I was honored to receive the Jeffrey A. Ernico Award for Support of Legal Services to the Public by the President of the Pennsylvania Bar Association in October of 2006.

**Class Action Appointments/Experience**

22.     I have been approved as class counsel or co-counsel in the following cases (partial

list):

(a)     *Delgado v. Commonwealth Financial Systems, Inc.*, U.S.D.C. E.D. Pa. No.

06-702(AB) (September 26, 2007) (FDCPA class)

(b)     *Dotson v. MRS Associates, Inc.,* U.S.D.C. E. D. Pa. No. 06-615(NS) (June

27, 2007) (FDCPA class);

(c)     *Townes v. NCO*, U.S.D.C. E.D. Pa. No. 06-1305(MAM) (July 12, 2007)

(FDCPA class);

(d)     *Weinstock v. Inovision*, U.S.D.C. E.D. Pa. No. 05-cv-6392(LDD) (June 13,

2007) (FDCPA class);

(e)     *McCall v. Drive Financial Serv., L.P.*, 236 FRD 246 (E.D. Pa. 2006)

(FDCPA class);

(f)     *Rosenberg v. Academy Collections*, U.S.D.C. E.D. Pa. 04-cv-5585(JP)

(2006) (FDCPA class);

(g)     *Ciccarone, et al. v. Marchese,* 2004 U.S. Dist. Lexis 26489 (E.D. Pa. Dec.

14, 2004) (Identity theft class action, certified, later settled) ("Counsel for plaintiffs are commercial

litigation attorneys from two different law firms with substantial experience in prosecuting and

managing class actions.  They are competent, well-qualified and conducted the litigation with

forthrightness and vigor." *Id.* at *11);

(h)     *Muse v. Dymacol*, 2003 U.S. Dist. Lexis 21029 (E.D. Pa. Nov. 7, 2003)

(FDCPA class action);

(i)     *Wells v. Coldata*, U.S.D.C. E.D. Pa. No. 02-cv-6609 (AB) (June 26, 2003)

(FDCPA class action);

(j)        *Sabol v. Meenan Security Services*, Court of Common Pleas, Delaware

County, PA, No. 03-04502 (June 3, 2004) (Settlement class under Pennsylvania Consumer

Protection Law);

(k)        *Hage v. General Service Bureau*, 2002 U.S. Dist. Lexis 14443 (D.

Nebraska, August 5, 2002) (Fair Debt Collection Practices Act class certified, adopting Magistrate

Judge's Report and Recommendation for Certification, 2002 U.S. Dist. Lexis 16774 (March 26,

2002);

(l)        *Tenuto v. Transworld Systems, Inc.*, 2000 U.S. Dist. Lexis 14344 (E.D. Pa.

Oct. 2, 2000) (FDCPA class certified), *later op.*, *Tenuto*, 2001 U.S. Dist. Lexis 17694 (E.D. Pa.

Oct. 31, 2001)(settlement class approved);

(m)        *Lake v. First Nationwide Bank*, 156 FRD 615 (E.D. Pa. 1994) *later op.*,

900 F. Supp. 726 (1995) (Real Estate Settlement Procedures Act class action; settlement class);

(n)        *Herrmann v. Meridian Bank*, Philadelphia County, C.C.P., February Term,

1996, No. 1381, (RESPA class action; settlement class);

(o)        *Shaw v. Perimeter Credit, L.P.*, U.S.D.C. E.D. Pa. Civil Action No. 95-

7804 (AB) (FDCPA class action);

(p)        *Goslee v. The Franklin Mint*, U.S.D.C. E.D. Pa. Civil Action No. 97-8055

(EL) (FDCPA class action);

(q)        *O'Neill v. Sovereign Bank*, 1998 WL 1543498 (Philadelphia C.C.P.,

December 15, 1998) (certified class; RESPA class action).

23.        I have represented defendant(s) in class actions in the following cases (partial list)

(a)        *Black v. The Premier Co.*, U.S.D.C. E.D. Pa. 01-cv-4317 (JMK) 2002

U.S. Dist. Lexis 17165 (Title VII employment action; class certification refused);

(b)    *McKowan Lowe & Co. Ltd v. Jasmine Ltd.*, U.S.D.C. D.NJ. 96-cv-2318 (JR) (securities fraud claim; class certification refused, later proceeding at *McKowan Lowe & Co. v. Jasmine Ltd.*, 295 F.3d 380 (3rd Cir. 2002) (order vacated and remanded, class certified).

Pursuant to 28 U.S.C. §1746, I certify, under penalty of perjury that the foregoing is true and correct.

Date:  4/21/08

/s/ *Cary L. Flitter (CLF 5997)*
CARY L. FLITTER
Attorney for Plaintiff

LUNDY, FLITTER,
BELDECOS & BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA 19072
(610) 822-0782

clf\davis-riddle\pleadings\class settlement\tel cert

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERM DISTRICT OF PENNSYLVANIA

JOSEPH DAVIS, individually and

on behalf of all others similarly situated,

                          Plaintiff,

            vs.                                          CIVIL ACTION NO. 07-CV-0284(LDD)

RIDDLE & ASSOCIATES, P.C. and

JESSE RIDDLE,

                          Defendants.                    CLASS ACTION

## <u>CERTIFICATION OF THEODORE E. LORENZ</u>

I, THEODORE E. LORENZ, an adult individual, depose upon my oath and certify the

following to be true and correct:

1.      I am an attorney with the law firm of Lundy, Flitter, Beldecos & Berger, P.C.  We

represent plaintiff Joseph Davis, individually, and on behalf of all others similarly situated, in

connection with the above-captioned matter involving violations of the Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. §1692.

2.      This Certification is filed in support of Plaintiff's Motion for Preliminary

Approval of a Class Settlement in the above-captioned matter.

3.      I am admitted to practice before the United States District Courts for the Eastern

District of Pennsylvania, the District of New Jersey, the Third Circuit Court of Appeals, the

New Jersey Supreme Court, and the Pennsylvania Supreme Court.

4.      I graduated *cum laude* from Widener University School of Law, located in

Wilmington, Delaware, in 1992.   I was also a member of the Moot Court Honor Society.

5.     From August 1992 to August1993, I served as a law clerk to the Honorable

Eugene D. Serpentelli, the Assignment Judge for the New Jersey Superior Court, Ocean

County, New Jersey.  I was responsible for researching issues, writing legal memoranda, and

assisting during trials.

6.     Upon completing my clerkship, I joined the law firm of Meyner and Landis in

Newark, New Jersey.  My practice primarily involved commercial litigation. I was responsible

for all aspects of my cases, from discovery through to trial.  I practiced at Meyner and Landis

from September 1993 to March 1996.

7.     In April 1996, I joined the law firm of Lyon, Glassman & Lorenz, P.C., located in

Florham Park, New Jersey, where I was a member until April 1999.  I continued to primarily

litigate and try commercial matters.  I was responsible for all aspects of my cases, from

discovery through to trial.

8.     In April 1999, I joined the Pennsylvania Attorney General's Office, located in

Philadelphia, Pennsylvania.  From April 1999 to December 2004, I worked in the Civil

Litigation Unit, where I was responsible for investigating and litigating Civil Rights cases,

including Title VII discrimination cases.  I was responsible for all facets of my cases, from

discovery, through motion practice (both discovery and dispositive), to trial.

9.     I have also briefed cases and argued before the Third Circuit Court of Appeals.

See Geisler v. Hoffman, C.A. 99-1971 (3d Cir.)(argued); McGrath v. Johnson, C.A. 01-2373

(3d Cir.); Hung v. Evanko, C.A. 03-4475, 115 Fed. Appx. 553 (3d Cir. 2004).

10.     In January 2005, I joined the law firm of Lundy, Flitter, Beldecos & Berger, P.C.,

where I litigate commercial cases, with a particular focus on consumer protection law,

including cases arising under the Consumer Credit Protection Act.  See, Smith v. Hecker, 2005

WL 894812 (E.D. Pa., April 18, 2005); *Nelson v. Select Financial Services,* 2006 WL 1672889 (E.D. Pa., June 9, 2006).

11.   I have been appointed co-class counsel in the consumer class matters of *McCall v. Drive Financial Services, LP and Drive GP, LLC.,* 236 F.R.D. 246 (E.D. Pa. 2006), *Dotson v. M.R.S. Associates, Inc.,* 06-cv-615 (E.D. Pa. 2006), *Weinstock v. InoVision-Medclr Portfolio Group, LLC et.al.,* 05-cv-6392 (E.D. Pa. 2006), and *Townes v. NCO Financial Systems, Inc.,* 06-cv-1305 (E.D. Pa. 2006).

12.   I also serve in the U.S. Army Reserve Judge Advocate Corps and maintain the rank of Captain.  I serve as a legal advisor to commanders and soldiers on a variety of issues, and prosecute cases on behalf of the U.S. government.   I was deployed to Afghanistan with the 82nd Airborne Division from May 2007 to December 2007 in support of Operation Enduring Freedom.

13.   All said, I have substantial experience investigating, litigating, and trying cases which, along with the extensive trial and class experience of co-counsel, Cary Flitter, will serve the class well in this matter.

I certify the foregoing to be true and correct under penalty of perjury.


Date:   4/21/08                              *s/Theodore E. Lorenz (TEL5114)*
                                             THEODORE E. LORENZ
                                             Attorney for Plaintiff

                                             LUNDY, FLITTER,
                                             BELDECOS & BERGER, P.C.
                                             450 N. Narberth Avenue
                                             Narberth, PA 19072
                                             (610) 822-0781

clf\davis-riddle\pleadings\cert of service (motion for prelim approval)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH DAVIS individually and on behalf of all others similarly situated,<br>　　　　　　　　　Plaintiff<br><br>　　　　vs.<br><br>RIDDLE & ASSOCIATES, P.C. and JESSE RIDDLE<br>　　　　　　　　　Defendants | CIVIL ACTION<br><br><br><br><br>NO. 07-CV-0284(LDD)<br><br>CLASS ACTION |

## CERTIFICATE OF SERVICE

　　　I hereby certify that on April 21, 2008, I electronically filed Plaintiff's Motion for Preliminary Approval of Class Settlement and Notice to the Class (Uncontested), along with a Memorandum in support thereof, the Certification of Cary L. Flitter, the Certification of Theodore E. Lorenz, and a proposed Order, with the Clerk of Court using the CM/ECF system which sent notification of such filing to:

　　　Richard J. Perr, Esquire
　　　30 South 17th Street, Suite 1800
　　　Philadelphia, PA 19103-4005

　　　Said document is available for viewing and downloading from the ECF system.

　　　A copy will also be sent by email to the following:

　　　Jeffrey Turner, Esquire
　　　Boyd Gentry, Esquire
　　　SURDYK, DOWD & TURNER, L.P.A.
　　　40 N. Main Street, Suite 1610
　　　Dayton, OH 45423

Date:　4/21/08　　　　　　　　　　　*/s/ Theodore E. Lorenz (TEL 5114)*____
　　　　　　　　　　　　　　　　　THEODORE E. LORENZ